The Honorable Benjamin H. Settle

UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| UNITED STATES OF AMERICA, Plaintiff<br><br>v.<br><br>HAROLD KUPERS, Defendant. | NO. CR15-5350BHS<br><br>**GOVERNMENT'S SENTENCING MEMORANDUM** |

## I. INTRODUCTION

Defendant Harold Kupers is to be sentenced for trafficking in unlawfully-harvested maple in violation of the Lacey Act. By knowingly creating a market for wood stolen from the National Forest, defendant caused far more destruction than any individual poacher who has ever come before this Court. By the same token, defendant profited far more richly from this theft than the cutters themselves. He collected over $800,000 in revenues, enjoying a profit margin he characterized as "absolutely huge."

Defendant's blatant disregard for environmental laws, which continued for two years after law enforcement directly warned him about his practices, requires a substantial prison sentence. Accordingly, the government recommends that the Court sentence defendant to a low-end sentence of 24 months of imprisonment.

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

## II. BACKGROUND

### A. Figured Maple and the Specialized Forest Products Act

Defendant is the former owner and operator of a Winlock, Washington mill named J&L Tonewoods. PSR ¶ 10. J&L Tonewoods was in the business of purchasing big leaf maple from persons who harvested the wood. In particular, J&L Tonewoods specialized in purchasing high-value maple known as "figured maple." *Id.* After purchasing the figured maple, defendant would then sell the figured maple to commercial purchasers such as guitar and violin manufacturers and distributors of specialty wood products.

As discussed in prior submissions, the high price of figured maple has resulted in a rash of illegal maple poaching in the National Forests and on state and private property. The Washington Legislature addressed this problem in the Washington Specialized Forest Products Act, RCW 76.48 (the "Act"). The Specialized Forest Products Act requires anyone cutting big leaf maple to obtain a permit to do so from the sheriff of the applicable county. As part of the permitting process, the cutter must identify the specific parcel of land from which he intends to harvest the maple. The Act further requires purchasers of big leaf maple, such as the defendant, to review the Specialized Forest Product permit of any maple seller before purchasing the maple, thereby verifying that the wood was lawfully harvested.

### B. Defendant's Purchase of Stolen Maple

Defendant sold hundreds of thousands of dollars' worth of maple annually at a 200% profit margin—a margin that defendant characterized as "absolutely huge." PSR ¶ 15. The reason defendant could mark his wood up so much was simple: he was purchasing wood on the cheap because it was stolen. Defendant then sold the wood to legitimate buyers at market prices, representing that he had obtained it lawfully. For example, defendant submitted a certification to one of his major purchasers on which he represented that the wood was "legally harvested" and that he had "used due diligence to make this determination." Ex A at 3. Thus, defendant's business was, at its core,

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

laundering illegal products—purchasing stolen goods and passing them off to the legitimate market.

Defendant's representations that he had engaged in "due diligence" and verified that the wood was legal were the opposite of the truth. In fact, defendant purchased the wood from people whom he described as "riffraff" and "on crack" under circumstances that made it obvious the wood was stolen. One former partner of defendant, Tim Adams, told agents that he quit working with defendant because, rather than finding legal sources of wood, defendant insisted on "letting the crackheads bring it in." Ex. B.

The poachers defendant purchased from would generally arrive at the mill early in the morning covered in sawdust, making it clear that they had been cutting maple during the night. PSR ¶ 13. It is well known in the maple industry that maple poachers log at night to avoid detection, and there is no legitimate reason for the dangerous practice of logging in the dark. Further, rather than appearing in log trucks or other commercial vehicles, the poachers would often drive vehicles that would conceal the loads of maple. For example, defendant Ryan Justice transported maple to J&L Tonewoods in the back of a Crown Victoria. In addition, whereas a legitimate logger will cut a maple into billets (the block units in which figured maple is bought and sold) at the logging site so that he only needs to haul the wood he is going to sell, the poachers would haul large rounds of maple to the J&L Tonewoods parking lot, where they would then cut the rounds into billets. PSR ¶ 13. As defendant well knew, this practice allowed the poachers to leave the thefts sites as quickly as possible, completing their work on the J&L Tonewoods lot.

Because defendant was purchasing stolen wood, he knew the poachers could not produce Specialized Forest Products permits as required by law. So, defendant simply chose to ignore this clear legal requirement. Defendant purchased hundreds of thousands of dollars' worth of stolen wood without requiring the sellers to show Specialized Forest Products Permits. PSR ¶ 15. In a handful of cases, defendant asked the poacher to fill out a "landowner" form, on which the poacher was required simply to write a name and phone number of the landowner who had supposedly authorized the cut. Ex. C. These

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

unverified forms did nothing to ensure that the seller had actually cut the wood legally. Defendant undoubtedly hoped these forms would provide him some measure of coverage in the event of an investigation.

On April 11, 2012, a Forest Service special agent and a Forest Service law enforcement officer interviewed defendant as part of a maple poaching investigation. PSR ¶ 14. During the interview, defendant acknowledged that he knew much of the wood he purchased was probably stolen. The officers specifically told defendant he was required by law to review Specialized Forest Products Permits for all persons from whom he purchased maple. *Id.* Defendant asked whether he should continue to purchase wood from maple poachers. The agents told defendant that they could not tell him who to do business with, but that he needed to comply with the Specialized Forest Products Act.

Despite this express warning from the Forest Service officials, defendant continued to purchase figured maple from poachers without checking their Specialized Forest Products Act permits. *Id.* Defendant unlawfully purchased and sold $499,414 worth of figured maple during the two years following his April 2012 contact with Forest Service officials. *Id.*

On July 23, 2015, the grand jury charged defendant with seven counts of violating the Lacey Act, 16 U.S.C. § 3372(a)(2)(B), and one count of Receiving Stolen Public Property in violation of 18 U.S.C. § 641. On November 16, 2015, defendant entered a guilty plea to one count of violating the Lacey Act. The parties agreed that, for sentencing guideline purposes, the loss would be limited to the value of unlawful maple sales defendant made after April 2012, when defendant was directly warned about his practices. This resulted in a loss figure of $499,414.

//

//

//



UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

## III. SENTENCING GUIDELINES

The government agrees with Probation's guideline calculation, which is as follows:

| **Item** | **Guideline** | **Adjustment** |
|---|---|---|
| Base | 2Q2.1(a) | +6 |
| Value of unlawfully-trafficked plants exceeds $250,000 | 2Q2.1 2B1.1(b)(1)(G) | +12 |
| Offense committed for pecuniary gain; pattern of violations | 2Q2.1(b)(2) | +2 |
| Acceptance | 3E1.1(a) | -3 |
| **Total** | | 17 |

With a Criminal History Category of I, defendant's guideline range is **<u>24-30</u>** months.

## IV. RATIONALE FOR SENTENCING RECOMMENDATION

The government recommends a 24-month period of imprisonment for the following reasons:

The nature and circumstances of this offense are very serious. Unlawful logging on public lands is a major problem in this district. The government has prosecuted numerous individual poachers over the last ten years in an effort to eradicate this problem. However, so long as unscrupulous mill owners like defendant create a market for poached wood, individuals will turn to poaching faster than the government can investigate and prosecute the poachers. Defendant's willingness to buy poached wood is the very root of the poaching problem. For example, none of the co-defendants—Ryan Justice, James Miller, or Kevin Mullins—would have engaged in maple poaching if they did not know they had a willing outlet for their stolen wood. It was defendant's

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

willingness to purchase wood he knew was stolen, and in particular, to ignore the Specialized Forest Products Act, that created the incentive for them to poach maple.

Because maple poaching will end only when purchasers like defendant stop buying stolen wood, deterrence is a particularly important sentencing consideration here. As defendant has demonstrated, an unscrupulous maple dealer can make an “absolutely huge” profit margin if he is willing to ignore the law. The consequence for defendant’s behavior must be great enough to outweigh the more than $800,000 in revenue defendant collected through his crime. Defendant and other participants in the lumber industry need to see that trafficking in unlawful products will carry heavy consequences.

The Court should also consider several specific additional aggravating factors. First, the conduct is aggravated because of the nature of the stolen property. Defendant did not simply trade in stolen money or electronics—he dealt in stolen public natural resources that cannot be replaced. Second, defendant engaged in these illegal practices for many years, making hundreds of illegal purchases. This was not a single lapse in judgment or a short period of criminal activity. Rather, defendant built an entire business on the theft of natural resources—and profited handsomely from it. Third, the crime is aggravated by the fact that defendant was expressly warned by law enforcement that his practices were illegal, and that he was purchasing stolen wood. Even after being so warned, defendant made the decision to continue to traffic in illegal wood for approximately two years. This protracted, calculated, and volitional course of conduct warrants a 24-month sentence.

//

//

//

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

**V. CONCLUSION**

For the foregoing reasons, the Court should sentence defendant to 24 months of imprisonment, which should be followed by three months of supervised release, and should be ordered to pay restitution in the agreed amount of $159,692.

DATED this 1st day of February, 2016.

Respectfully submitted,

ANNETTE L. HAYES
United States Attorney

*s/ Seth Wilkinson*

SETH WILKINSON
Assistant United States Attorney
United States Attorney's Office
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
Telephone: (206) 553-7970

SENTENCING MEMORANDUM
UNITED STATES v. KUPERS, CR15-5350BHS- 7

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

**CERTIFICATE OF SERVICE**

I hereby certify that on February 1st, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the attorney of record for Defendant.

*s/ Jennifer J. Witt*
JENNIFER J. WITT
Legal Assistant
United States Attorney's Office
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
Phone: 206-553-2520
Fax: 206-553-2502
E-mail: Jennifer.Witt@usdoj.gov

SENTENCING MEMORANDUM
UNITED STATES v. KUPERS, CR15-5350BHS- 8

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970